UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

        Plaintiff,

                            Case No. 24-cr-48-pp

    v.

NOAH CORTEZ
and ROMEO RAMONE HILL,

        Defendants.

---

**ORDER OVERRULING DEFENDANTS' OBJECTIONS (DKT. NOS. 45, 46), ADOPTING JUDGE DUFFIN'S RECOMMENDATION (DKT. NO. 44) AND DENYING DEFENDANTS' MOTIONS TO DISMISS COUNT TWO OF THE INDICTMENT (DKT. NOS. 27, 30)**

---

On March 5, 2024, the grand jury issued a two-count indictment charging Noah Cortez and Romeo Ramone Hill with knowingly taking a motor vehicle from another by force, violence and intimidation (in violation of 18 U.S.C. §2119), colloquially referred to as "carjacking," and knowingly using, carrying and brandishing a firearm during and in relation to that carjacking (in violation of 18 U.S.C. §924(c)). Dkt. No. 1.

On May 31, 2024, Cortez filed a motion to dismiss Count Two—the §924(c) count—because, according to Cortez, that count failed to state an offense. Dkt. No. 27 at 1. He argued that the carjacking alleged in Count One "categorically fails to qualify as a 'crime of violence' under § 924(c)(3)(A)," and therefore that he could not be convicted of using, carrying or brandishing a firearm during and in relation to a "crime of violence." Id. Specifically, he

1

argued that "there's a categorical mismatch between the predicate offense at issue—carjacking in violation of 18 U.S.C. § 2119—and § 924(c)(3)(A)'s definition of crime of violence." Id. at 5. Cortez asserted that carjacking under §2119 can be committed through intimidation and not require a knowing or purposeful use or threat of force. Id. He maintained that "at least one alternative means of committing the offense of carjacking—attempting to do so—falls outside of the crime of violence definition after *United States v. Taylor*, 142 S. Ct. 2015 (2022)." Id. He asserted that under the "categorical approach," §2119 does not always require the government to prove the use, attempted use or threatened use of force, and thus that §2119 cannot serve as a predicate offense for the §924(c) offense of using, carrying or brandishing a firearm during and in relation to a crime of violence. Id. at 4-5. The same day, defendant Hill filed a motion to dismiss Count Two, adopting all his co-defendant's arguments. Dkt. No. 30. The government opposed the motions, dkt. no. 41, and both defendants filed replies, dkt. nos. 42, 43.

On August 5, 2024, Magistrate Judge William E. Duffin issued an order recommending that this court deny both motions. Dkt. No. 44. Judge Duffin's recommendation was succinct:

> Chief Judge Pamela Pepper in *Jordan v. United States*, No. 20-cv-935-pp, 2022 U.S. Dist. LEXIS 196396 (E.D. Wis. Oct. 28, 2022), and *Ellis v. United States*, No. 19-cv-1155-pp, 2020 U.S. Dist. LEXIS 202645 (E.D. Wis. Oct. 30, 2020), rejected the arguments the defendants make. So, too, has every circuit court to have considered the question. *See United States v. Jackson*, 918 F.3d 467, 486 (6th Cir. 2019); *Estell v. United States*, 924 F.3d 1291, 1293 (8th Cir. 2019); *Ovalles v. United States*, 905 F.3d 1300, 1304, 27 Fla. L. Weekly Fed. C. 1432 (11th Cir. 2018); *United States v. Cruz-Rivera*,

904 F.3d 63, 66 (1st Cir. 2018); *United States v. Gutierrez*, 876 F.3d 1254, 1257 (9th Cir. 2017); *United State v. Jones*, 854 F.3d 737, 740 (5th Cir. 2017); *United States v. Evans*, 848 F.3d 242, 247 (4th Cir. 2017).

For the reasons set forth in *Jordan*, 2022 U.S. Dist. LEXIS 196396, and *Ellis*, U.S. Dist. LEXIS 202645, the court recommends that the defendants' motions to dismiss be denied.

Id. at 1-2.

On August 19, 2024, both defendants timely filed objections. Dkt. Nos. 45 (Hill), 46 (Cortez). On August 23, 2024, the government filed a notice advising the court that it would rely on the brief it had filed before Judge Duffin and would not be submitting a further brief. Dkt. No. 48. The objections, then, were fully briefed as of August 19.

## I.     Legal Standard

Section 636(b)(1)(B) of Title 28 allows a district judge to designate a magistrate judge to submit to the district judge proposed findings of fact and recommendations. Section 636(c)(1)(C) says that if a party objects to a magistrate judge's recommendations, the district court "shall made a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." It allows the district judge to "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."

## II.     Objections

Of the two defendants, Cortez filed the more fulsome objection. Dkt. No. 46. He acknowledges the rulings in Jordan and Ellis. Id. at 1. He also concedes

3

that Judge Duffin was "not incorrect" in observing that federal courts of appeal have rejected the argument he makes. Id. at 1-2. He asserts, however, that there is "no binding precedent requiring the denial" of his motion to dismiss, and he contends that he "raises arguments that were neither raised nor squarely addressed by this Court in *Jordan* and *Ellis*." Id. at 2. He recounts, for example, that in 2023, the defendant in the Eleventh Circuit case Judge Duffin cited—Ovalles—filed a motion to vacate or correct her sentence under 28 U.S.C. §2255, challenging her §924(c) conviction in the wake of the U.S. Supreme Court's decisions in United States v. Davis, 588 U.S. 445, 470 (2019) and United States v. Taylor, 596 U.S. 845, 860 (2022). Id. Cortez says that in that case, the government agreed to the district court granting the motion and vacating Ovalles's §924(c) conviction. Id. Cortez says that "almost all" of the cases Judge Duffin cited were decided between 2018 and 2020, and thus do not "address the distinct arguments raised by Cortez, such as those based on *Borden v. United States*, 593 U.S. 420, 445 (2021), and *United States v. Taylor*, 596 U.S. 845, 860 (2022)." Id. at 3. In the absence of a more recent Seventh Circuit decision, the defendant asks this court "to explore the topic anew through the lens of *Davis*, *Borden*, and *Taylor* in the context of his Motion to Dismiss." Id.

Citing Taylor, Cortez argues that §2119(1) does not qualify as a predicate "crime of violence" under §924(c) unless it "has as an element the use, attempted use, or threatened use of physical force." Id. (quoting Taylor, 596 U.S. at 850). He says that this court must ask "whether there is some way to

4

commit [a carjacking] without using, attempting to use, or threatening physical force." Id. (quoting United States v. Worthen, 60 F.4th 1066, 1068 (7th Cir. 2023)).

Cortez argues that §2119(1) is an "indivisible offense"—"carjacking and attempted carjacking are alternative means of committing the single indivisible offense of carjacking because the terms are bundled together in a single sentence within a single provision with a single penalty." Id. at 4-5. He maintains that if the court finds that §2119(1) is indivisible, it must conclude that the government is not required in every case to prove the use, attempted use or threatened use of force, and thus that §2119(1) does not constitute a crime of violence sufficient to be a predicate for a §924(c) conviction. Id. at 5-6. Cortez identifies post-Taylor cases in which he says the government has admitted that carjacking in violation of §2119(1) is not a crime of violence; both cases the defendant cites are cases from the Northern District of Georgia. Id. at 6 (citing Ovalles, Case No. 10-cr-305, Dkt. No. 71 (N.D. Ga. Aug. 22, 2023) and Khan v. United States, Case No. 17-CR-433, Dkt. No. 53 at 6-7 (N.D. Ga. Jan. 26, 2023)). Cortez asserts that in this case, the government—realizing that it had conceded the defendant's argument in the two N.D. Georgia cases—has argued that §2119(1) can be "divided" into the crimes of attempted carjacking and completed carjacking (he says that a modified categorical approach applies to divisible statutes). Id. He insists, however, that the government has offered little to support its position that the statute is divisible and urges the court to disregard decisions that pre-date Taylor. Id. at 7-8.

5

Cortez also argues that under Borden, carjacking under §2119(1) does not have a sufficiently culpable *mens rea* to qualify as a "crime of violence" under §924(c)(3)(A). Id. at 8 (citing Borden, 593 U.S. at 444). Cortez says that Borden established that the "force" clause of §2119 (the clause that defines a crime of violence as one that "has as an element the use, attempted use, or threatened use of physical force") applies only to offenses that categorically involve the specific intent to use, attempt to use or threaten to use force; he argues that a defendant can violate §2119 by committing a carjacking through conditional intent and conditional intimidation. Id. at 8-9. He maintains that under Borden, it isn't enough for the offense to require a general intent to engage in an act that "happens to put a person in fear of injury;" he maintains that to satisfy the "force" clause, "physical force put in motion by a deliberate act must be accompanied by an intent to apply that force or threaten force against the object of that force." Id. at 8 (citing Borden, 593 U.S. at 444. He says that this requires a "deliberate choice of wreaking harm on another." Id. (quoting Borden, at 438). He reminds the court that the issue is not whether the defendant's actions caused or threatened harm, but "whether the offense at issue requires proof of an intent to harm or threaten harm to another." Id. at 8-9.

Cortez seeks to distinguish the Seventh Circuit's recent decision in United States v. Brown, 74 F.4th 527, 532 (7th Cir. 2023), in which he says that the Seventh Circuit "evaluated []whether a defendant's conviction for '[taking] a motor vehicle from [a] person . . . by the use of force or by

6

threatening the imminent use of force' qualified as a predicate offense under the elements clause of the Armed Career Criminal Act." Id. at 9. He says that the <u>Brown</u> court concluded that "the statute of conviction" could be a predicate offense under the Armed Career Criminal Act because "it prohibited a 'taking *by* the use or threat of force,' which 'strongly suggests that force or intimidation must be aimed or directed at the taking of the motor vehicle.'" Id. (quoting <u>Brown</u>, 74 F.4th at 531) (emphasis in original). He maintains that "[b]ecause the [carjacking] statute proscribed using force for a specific purpose—'in order to facilitate the taking of a vehicle'—it was 'not the sort of reckless use of force that *Borden* found to be beyond the scope of the elements clause.'" Id. Cortez argues that §2119(1), "by contrast, requires only conditional intent and can be accomplished through intimidation that's similarly conditional." Id. He says:

> In *Holloway v. United States*, 562 U.S. 1 (1999), the Supreme Court addressed the *mens rea* element of 18 U.S.C. § 2119 and stated that in a "carjacking case in which the driver surrendered or otherwise lost control over his car without the defendant attempting to inflict, or actually inflicting, serious bodily harm, Congress' inclusion of the intent element requires the Government to prove beyond a reasonable doubt that *the defendant would have at least attempted to seriously harm or kill the driver if that action had been necessary to complete the taking of the car.*" *Id.* at 11-12 (emphasis added). In other words, the intent to cause ..." requirement is satisfied if the government proves that an individual would have attempted to harm or kill the victim had the victim offered resistance. *Id.*; *see United States v. Jones*, 188 F.3d 773, 777 (7th Cir. 1999) ("[T]he evidence was sufficient to support a finding of conditional intent to do the driver harm had he not complied with the defendants' demands.") (emphasis added); *accord United States v. Douglas*, 489 F.3d 1117, 1128 (11th Cir. 2007) (intent requirement in § 2119 satisfied where defendant had intent "to seriously harm [the victim] if it had been necessary to complete the taking of the vehicle"). So, the government

7

does not have to prove specific intent to put the victim in fear of injury in every case. Thus, the statute "lacks the targeted conduct that the [force clause] requires" after *Borden*. *United States v. Gonzales*, No. 21-2022, 2021 WL 3236540, at *3-4 (10th Cir. 2021).

Id. at 9-10.

Cortez says that carjacking by intimidation is "similarly conditional in nature." Id. at 10. He quotes the First Circuit's pattern jury instructions, which define "intimidation" under §2119 as "action or words used for the purpose of making someone else fear bodily harm *if he or she resists*." Id. (quoting the First Circuit's pattern jury instruction 4.18.2119). From this definition, Cortez concludes that "intimidation in this context means the threat of force *if force is necessary to accomplish the taking of the vehicle* or *if the individual fails to comply*." Id. (emphasis by the defendant). He maintains that carjacking by intimidation doesn't require specific intent to intimidate, nor does it "necessarily" require that in every case, the government must prove an intentional threat to do harm. Id. at 10-11 (referencing United States v. Blakney, Case No. 11-562-1, 2021 WL 3929694 (E.D. Pa. Sept. 2, 2021), which he says holds that "a Pennsylvania robbery offense which does not require an intentional threat of force is not a qualifying offense under the force clause.").

For his part, defendant Hill says that he "understands why Magistrate Judge Duffin decided the issue as he did," and describes the recommendation as "understandable and thoughtful." Dkt. No. 45 at 3. Nevertheless, he argues that the Seventh Circuit has not foreclosed the defendants' arguments and

8

says that he considers Cortez's reply brief a "master class on the history and evolution of the law." Id. at 4.

## III. Analysis

### A.    The Language of the Indictment and the Relevant Statutes

Count One of the indictment alleges that on or about January 21, 2024, the defendants "knowingly took a motor vehicle, which had been transported, shipped, and received in interstate and foreign commerce, from another person by force, violence, and intimidation, with the intent to cause death and serious bodily harm;" it alleged that the defendants did so in violation of 18 U.S.C. §2119(1) and 18 U.S.C. §2. Dkt. No. 1 at 1. Section 2119(1) of Title 18 says,

> Whoever, with the intent to cause death or serious bodily harm takes a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another by force and violence or by intimidation, or attempts to do so, shall (1) be fined under this title or imprisoned not more than 15 years, or both . . . .

Count Two of the indictment alleges that on January 21, 2024, the defendants "knowingly used, carried, and brandished a firearm during and in relation to a crime of violence, namely motor vehicle robbery as charged in Count One of this Indictment;" it says that the defendants did so in violation of 18 U.S.C. §§924(c)(1)(A)(ii) and 2(a). Dkt. No. 1 at 2. Section 924(c)(1)(A)(ii) says:

> Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of the law, any person who, during and in relation to any crime of violence . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence . . . (ii) if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years . . . .

9

For a defendant to be convicted of violating §924(c), he must have used or carried a firearm during and in relation to a "crime of violence," or possessed a firearm in furtherance of a "crime of violence." Conviction requires a "predicate offense"—the crime of violence. If there is no "crime of violence," there can be no conviction for a violation of §924(c). Section 924(c)(3) defines "crime of violence": the offense must be a felony and must "(A) ha[ve] as an element the use, attempted use, or threatened use of physical force against the property or person of another, or (B) . . . by its nature, involve[] a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." Subsection (c)(3)(A) sometimes is called the "elements" clause or the "force clause." Subsection (c)(3)(B) is sometimes called the "residual clause."

B.    This Court's Decisions in *Ellis* and *Jordan*

The defendants argue that the crime with which they are charged—carjacking—does not qualify under §924(c)(3)(A) as a crime that has as an element the use, attempted use or threatened use of physical force. As Judge Duffin observed, and as the defendants have conceded, twice before this court has considered the question of whether carjacking qualifies as a "crime of violence" under §924(c)(3)(A). In both cases, defendants convicted of violating §924(c) based on a predicate offense of carjacking filed post-conviction motions to vacate, correct or set aside their convictions. The petitioners argued that carjacking did not constitute a crime of violence under §924(c)(3)(A)—the same

10

argument the defendants make here (albeit based on different reasoning). The court rejected that argument.

In its October 30, 2020 decision in <u>Ellis v. United States</u>, Case No. 19-cv-1155-pp, 2020 WL 6382926 (E.D. Wis. Oct. 30, 2020), the court explained its reasoning:

> The Seventh Circuit has not yet ruled on whether carjacking qualifies as a "crime of violence" under the elements clause, § 924(c)(3)(A). Several other federal appellate courts, however, have held that carjacking is a crime of violence under the elements/force clause.
>
> \* \* \* \* \*
>
> This court agrees with those circuits. The petitioner pled guilty to violating 18 U.S.C. § 2119(1) and (2). . . . That statute provides that
>
> > [w]however, with the intent to cause death or serious bodily harm takes a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another by force and violence or by intimidation, or attempts to do so . . .
>
> is subject to imprisonment. 18 U.S.C. § 2119. The petitioner's plea agreement listed the elements of the offense of carjacking:
>
> > <u>First</u>, the defendant or his accomplice intentionally took a vehicle from a person;
> >
> > <u>Second</u>, the defendant or his accomplice did so by means of force and violence, or by intimidation;
> >
> > <u>Third</u>, the motor vehicle had been transported, shipped or received in interstate or foreign commerce; and
> >
> > <u>Fourth</u>, the defendant or his accomplice intended to cause death or serious bodily injury in order to complete the taking of the vehicle.
>
> <u>United States v. Robert Ellis</u>, Case No. 15-cr-201, Dkt. No. 87 at p. 3 (E.D. Wis. Feb. 9, 2017).

11

The first option under the second element—taking a vehicle by "means of force and violence"—satisfies the § 924(c)(3)(A) requirement that the crime have "as an element the use, attempted use, or threatened use of physical force against the property or person of another." The Seventh Circuit has held that the second option—taking a vehicle "by intimidation," also satisfies that requirement, but in the context of bank robbery in violation of 18 U.S.C. § 2113. See United States v. Armour, 840 F.3d 904, 908 (7th Cir. 2016).

In Armour, the Seventh Circuit held that the petitioner's bank robbery conviction satisfied the elements clause of a "crime of violence" under 18 U.S.C. § 924(c)(3)(A). Id. The petitioner argued that because "a person can commit robbery by 'intimidation,' as distinct from 'by force or violence,'" "robbery by 'intimidation' does not qualify as a crime of violence." Armour, 840 F.3d at 908. The Armour court rejected that argument, holding that "'[i]ntimidation means the threat of force.'" Id. at 909 (quoting United States v. Jones, 932 F.2d 624, 625 (8th Cir. 1991)). Armour surveyed Seventh Circuit cases that had found that "'[i]ntimidation exists 'when a bank robber's words and actions would cause an ordinary person to feel threatened, by giving rise to a reasonable fear that resistance or defiance will be met with force.'" Id. (citing United States v. Gordon, 642 F.3d 596, 598 (7th Cir. 2011); United States v. Thornton, 539 F.3d 741, 748 (7th Cir. 2008); United States v. Burnley, 533 F.3d 901, 903 (7th Cir. 2008); and United States v. Clark, 227 F.3d 771, 885 (7th Cir. 2000)).

Carjacking is no different. A carjacker's words or actions would cause an ordinary person to feel threatened, by giving rise to a reasonable fear that her resistance will be met with force. Because "intimidation" contains an inherent threat of the use of physical force, the carjacking statute qualifies as a crime of violence under the elements clause of § 924(c).

Id. at *4-5. Two years later, in Jordan v. United States, Case No. 20-cv-935-pp, 2022 WL 16530880, at *9-10 (E.D. Wis. Oct. 28, 2022), the court reiterated that ruling.

It appears that the defendants may not have been aware of these decisions when they filed their motions to dismiss—neither mentioned them. The government pointed out this omission in its opposition brief. Dkt. No. 41 at

12

7. In reply, Cortez did not engage with these decisions. Dkt. No. 43. Hill's reply brief acknowledged them and conceded that their existence might make his effort to convince Judge Duffin that carjacking is not a crime of violence an "uphill struggle." Dkt. No. 42 at 2. In his objection to Judge Duffin's recommendation, Cortez acknowledged the decisions in Ellis and Jordan, but briefly asserted that he'd raised arguments before Judge Duffin that this court did not address in these decisions. Dkt. No. 46 at 2. He also argued that the court had decided Ellis before the Supreme Court's 2022 decision in Taylor and that the decision in Jordan did not mention Taylor or engage with the arguments Cortez makes here. Id. at 8.

To the extent that Cortez argues that the Seventh Circuit has not yet been asked to decide whether a completed carjacking in violation of §2119 has as an element "the use, attempted use, or threatened use of physical force against the property or person of another," such that it qualifies as a predicate crime of violence under §924(c)(3)(A), that is true. It was true in 2020 when this court decided Ellis and in 2022 when this court decided Jordan. In his objection to Judge Duffin's recommendation, Cortez argues that this court should reconsider its decisions in Ellis and Jordan by applying the Supreme Cour's reasoning from subsequent decisions; Cortez contends that if the court applies the "categorical approach" in analyzing what he characterizes as an "indivisible" statute (§2119), the court will come to a different conclusion.

The court agrees that the defendants have raised arguments in this case that the petitioners in Ellis and Jordan did not. In those cases, the defendants

did not raise the "categorical approach," or the "divisibility" of §2119, as the defendants do here. That isn't surprising—the "categorical approach" and the concept of "divisibility" of statutes are headache-inducing for trained and experienced lawyers, and the petitioners in <u>Ellis</u> and <u>Jordan</u> were representing themselves. So, despite having decided in two prior cases that carjacking is a crime of violence and thus a predicate act supporting a §924(c) charge, the court will address the defendant's arguments.

  C. <u>The "Categorical Approach"</u>

  In his opening brief before Judge Duffin, Cortez argued that "the carjacking offense charged in Count One categorically fails to qualify as a 'crime of violence' under § 924(c)(3)(A)," and asserted that the "'crime of violence' element of the § 924(c) offense charged in Count Two cannot be satisfied as a matter of law." Dkt. No. 27 at 1. He argued that if Judge Duffin were to apply the "categorical approach" in analyzing the carjacking statute, he would find that "there's a categorical mismatch between the predicate offense at issue—carjacking in violation of 18 U.S.C. § 2119—and § 924(c)(3)(A)'s definition of crime of violence." <u>Id.</u> at 5.

  As the court has said, the "categorical approach" is a headache-inducing concept for lawyers and judges, never mind laypersons. In <u>United States v. Fife</u>, Seventh Circuit Court of Appeals Judge Terry Evans—a master at stating difficult legal concepts in understandable and often humorous ways—described the problem that led to the development of this sometimes-confounding doctrine:

> Once upon a time, the names of crimes were descriptive of the underlying criminal conduct they defined. One did not need a law degree to have a fairly good idea about what it meant to be convicted of robbery, burglary, murder, or grand theft auto. Today, however, even a law degree doesn't necessarily ensure that one will know precisely what the underlying conduct was that supports convictions for things like "racketeering" and "continuing criminal enterprise."

United States v. Fife, 81 F.3d 62, 63 (7th Cir. 1996). A review of the categorical approach may help understand the defendants' arguments and this court's ruling.

### 1. The "First" Taylor: Taylor v. United States (1990)

Thirty-four years ago, in Taylor v. United States, the Supreme Court was "called upon to determine the meaning of the word 'burglary' as it is used in §1402 of Subtitle I (the Career Criminals Amendment Act of 1986) of the Anti-Drug Abuse Act of 1986, 18 U.S.C. § 924(e).[1]" Taylor, 495 U.S. 575, 577 (1990). The Career Criminals Amendment Act of 1986 enhanced the sentence of someone convicted of being a prohibited person in possession of a firearm if that person had three prior convictions for certain kinds of felonies, including "burglary." Id. Taylor was convicted of being a prohibited person in possession of a firearm, and he had four prior felony convictions, including two prior convictions for second-degree burglary under Missouri law. Id. at 578. Taylor argued that neither of his burglary convictions counted as predicate offenses for a §924(e) sentence enhancement because they did not involve "conduct that presents a serious potential risk of physical injury to another" under

---

[1] This statute now is known as the "Armed Career Criminal Act" (the "ACCA" for short).

15

§924(e)(2)(B)(ii) (one of the definitional sections of the Career Criminals Amendment Act of 1986). <u>Id.</u> at 579.

At the time, there was a circuit split "concerning the definition of burglary for the purposes of § 924(e)." <u>Id.</u> at 579-80. The Supreme Court explained the problem: "[t]he word 'burglary' has not been given a single accepted meaning by the state courts; the criminal codes of the States define burglary in many different ways." <u>Id.</u> at 580. The plain language of the sentence enhancement provision of the Career Criminals Amendment Act did not reveal "whether Congress intended 'burglary' to mean whatever the State of the defendant's prior conviction defines as burglary, or whether it intended that some uniform definition of burglary be applied to all cases in which the Government seeks a § 924(e) enhancement." <u>Id.</u> Further, if Congress had intended a uniform definition of "burglary," what *was* that uniform definition? "[W]as that definition to be the traditional common-law definition, or one of the broader 'generic' definitions articulated in the Model Penal Code and in a predecessor statute to § 924(e), or some other definition specifically tailored to the purposes of the enhancement statute?" <u>Id.</u>

Attempting to answer these questions, the Supreme Court reviewed the history of §924(e) in detail. Among other things, the Court explained that "the enhancement provision always has embodied a categorical approach to the designation of predicate offenses." <u>Id.</u> at 588. It said that "Congress intended that the enhancement provision be triggered by crimes having certain specified elements, not by crimes that happened to be labeled 'robbery' or 'burglary' by

16

the laws of the State of conviction." <u>Id.</u> at 588-89. In other words, the history of the enhancement provision showed that Congress intended "the range of predicate offenses" to include "all crimes having certain common characteristics—the use or threatened use of force, or the risk that force would be used—regardless of how they were labeled by state law." <u>Id.</u> at 589.

The Court also observed that some of the statute's history showed that, at one point, Congress "had in mind a modern 'generic' view of burglary, roughly corresponding to the definitions of burglary in a majority of the States' criminal codes." <u>Id.</u> Such a definition "both prevented offenders from invoking the arcane technicalities of the common-law definition of burglary to evade the sentence-enhancement provision, and protected offenders from the unfairness of having enhancement depend upon the label of the State of conviction." <u>Id.</u> In considering the total history of the statute's development, the Supreme Court concluded that Congress's "general approach, in designating predicate offenses, [was that of] using uniform, categorical definitions to capture all offenses of a certain level of seriousness that involve violence or an inherent risk thereof, and that are likely to be committed by career offenders, regardless of technical definitions and labels under the law." <u>Id.</u> at 590.

The Court held that "a person has been convicted of burglary for the purposes of a § 924(e) enhancement if he is convicted of any crime, regardless of its exact definition or label, having the basic elements of unlawful or unprivileged entry into, or remining in, a building or structure, with intent to commit a crime." <u>Id.</u> at 599. The Court conceded, however, that this holding

17

didn't resolve the issue in cases where the state statute under which the defendant was convicted varied from that generic definition. It explained that if the state statute under which the person was convicted is narrower than the generic definition the Court had articulated—say, a statute prohibiting first-degree or aggravated burglary—"there is no problem, because the conviction necessarily implies that the defendant has been found guilty of all the elements of generic burglary." Id.

The problem was with those state statutes that defined burglary more broadly than the generic definition the Court had articulated—statutes that did not require entry to be unlawful, or that included under "burglary" entry into places other than buildings (such as cars or vending machines). Id. That led the Court to ask "whether, in the case of a defendant who has been convicted under a nongeneric-burglary statute, the Government may seek enhancement on the ground that he actually committed a generic burglary." Id. at 599-600. In other words, the Court was required to consider whether application of the enhancement depended on what the particular defendant actually did or on the elements of the offense of conviction. As the Court put it, the question was "whether the sentencing court in applying § 924(e) must look only to the statutory definitions of the prior offenses, or whether the court may consider other evidence concerning the defendant's prior crimes." Id. at 600. It observed that appellate courts "uniformly have held that § 924(e) mandates a formal categorical approach, looking only to the statutory definitions of the prior

offenses, and not to the particular facts underlying those convictions." Id. And the Taylor Court found that approach persuasive and adopted it.

The Court recognized one caveat. It explained that the categorical approach "may permit the sentencing court to go beyond the mere fact of conviction in a narrow range of cases where a jury was actually required to find all the elements of generic burglary." Id. at 602. As an example, "in a State whose burglary statutes include entry of an automobile as well as a building, if the indictment or information and jury instructions show that the defendant was charged only with a burglary of a building, and the jury necessarily had to find an entry of a building to convict, then the Government should be allowed to use the conviction for the enhancement." Id. This exception that allows courts to go beyond the fact of conviction in a narrow range of cases is called the "modified categorical approach."

2.    *The "Modified Categorical Approach"*

In March 2005, the Court confronted the situation it had imagined in Taylor—the situation in which a state's burglary statutes were broader than the generic definition of burglary the Taylor Court had enunciated. Prior to his federal indictment for being a prohibited person in possession of a firearm, the defendant in Shepard v. United States had pled guilty to violating Massachusetts burglary statutes that were broader than generic burglary; because he'd pled guilty, however, there were no jury instructions for the federal sentencing court to review to determine whether offenses to which Shepard had pled guilty had elements the same as or narrower than generic

19

burglary. Shepard, 544 U.S. 13, 16-17 (2005). The government had asked the sentencing court to look at the police reports submitted in support of issuance of the complaints; the district court declined, believing that Taylor forbade it from doing so, and did not enhance the defendant's sentence. Id. at 17. The appellate court vacated the sentence and remanded with instructions that the district court impose the fifteen-year mandatory minimum under §924(e). Id. at 19.

The Supreme Court first held, as lower courts had done, that "guilty pleas may establish ACCA predicate offenses and that *Taylor*'s reasoning controls the identification of generic convictions following pleas, as well as convictions on verdicts, in States with nongeneric offenses." Id. Next, it recounted that in Taylor, it had held that a court evaluating a nongeneric offense by applying the modified categorical approach could identify "generic burglary . . . only by referring to charging documents filed in the court of conviction, or to recorded judicial acts of that court limiting convictions to the generic category, as in giving instruction to the jury." Id. at 20. The Court reasoned that in a bench trial, "the closest analogs to jury instructions would be a bench-trial judge's formal ruling of law and findings of fact, and in pleaded cases they would be the statement of factual basis for the charge . . . , shown by a transcript of plea colloquy or by written plea agreement presented to the court, or by a record of comparable findings of fact adopted by the defendant upon entering the plea." Id. It opined that with those documents, "a later court could generally tell whether the plea had 'necessarily' rested on the fact

identifying the burglary as generic . . . ." Id. at 21. Accordingly, the Court concluded that "enquiry under [§924(e)] to determine whether a plea of guilty to burglary defined by a nongeneric statute necessarily admitted elements of the generic offense is limited to the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information." Id. at 26.

3.    *"Divisible" and "Indivisible" Statutes*

In Descamps v. United States, 570 U.S. 254 (2013), the Supreme Court recounted that it had approved the "modified categorical approach" "when a prior conviction is for violating a so-called 'divisible statute.'" Descamps, 570 U.S. at 257 (citing Shephard). The Court defined a "divisible" statute as one that "sets out one or more elements of the offense in the alternative—for example, stating that burglary involves entry into another building *or* an automobile." Id. The Court explained:

> If one alternative (say, a building) matches an element in the generic offense, but the other (say, an automobile) does not, the modified categorical approach permits sentencing courts to consult a limited class of documents, such as indictments and jury instructions, to determine which alternative formed the basis of the defendant's prior conviction. The court can then do what the categorical approach demands: compare the elements of the crime of conviction (including the alternative element used in the case) with the elements of the generic crime.

Id.

The facts in Descamps, however, required the Court to determine whether sentencing courts could use the modified categorical approach when

21

the defendant previously was convicted "under an 'indivisible' statute—*i.e.*, one not containing alternative elements—that criminalizes a broader swatch of conduct than the relevant generic offense." Id. at 258. The Court concluded that because "[t]hat would enable a court to decide, based on information about a case's underlying facts, that the defendant's prior conviction qualifies as an ACCA predicate even though the elements of the crime fail to satisfy [the] categorical test," "sentencing courts may not apply the modified categorical approach when the crime of which the defendant was convicted had a single, indivisible set of elements." Id.

The Court reflected on its decision in Shepard, describing the Massachusetts statute Shepard had been convicted of violating as being "divisible in nature" because "[n]o one could know, just from looking at the statute," whether Shepard had been convicted of burglarizing a building (generic burglary) or of burglarizing a boat or a car (nongeneric burglary). Id. at 262. It recounted that in Shepard it had authorized sentencing courts to look at a narrow set of materials to determine whether Shepard had been convicted of a crime with the elements of a generic burglary or a crime with nongeneric elements. Id. And it reiterated that its only purpose in allowing review of those documents was to allow the sentencing court "to assess whether [Shepard's] plea was to the version of the crime in the Massachusetts statute (burglary of a building) corresponding to the generic offense." Id. at 263. Referencing its decisions in Nijhawan v. Holder, 557 U.S. 29 (2009) and Johnson v. United States, 559 U.S. 133 (2010), the Court put it another way: it said that by

22

allowing courts to review the extra-statutory materials approved in Taylor and Shepard, it was giving sentencing courts the opportunity to determine which "statutory phrase" was the basis for the conviction. Id. (citations omitted).

Descamps, however, had not been convicted under a "divisible" statute. He had been convicted of violating a California burglary statute that prohibited entering certain locations "with intent to commit grand or petit larceny or any felony." Id. at 258-59. The Court explained that the California burglary statute did not require "the entry to be unlawful in the way most burglary laws do," which meant that the statute could cover a shoplifter who lawfully entered a store during normal business hours. Id. at 259. Thus, the California law covered a much broader range of conduct than the "generic" definition of burglary enunciated in Taylor. Id. The California statute did not involve "any list of alternative elements." Id. at 264. It was a single, "indivisible" statute that defined burglary more broadly than the generic offense. That meant that under Taylor, it could not serve as a predicate for the §924(e) enhancement. Id. at 265. The Court concluded:

> Our decisions authorize review of the plea colloquy or other approved extra-statutory documents only when a statute defines burglary not (as here) overbroadly, but instead alternatively, with one statutory phrase corresponding to the generic crime and another not. In that circumstance, a court may look to the additional documents to determine which of the statutory offenses (generic or non-generic) formed the basis of the defendant's conviction. But here no uncertainty of that kind exists, and so the categorical approach needs no help from its modified partner. We know Descamps' crime of conviction, and it does not correspond to the relevant generic offense. Under our prior decisions, the inquiry is over.

Id.

Three years later, in <u>Mathis v. United States</u>, the Court was asked to consider whether §924(e) "makes an exception" to the rule that a prior conviction qualifies as a predicate only if "its elements are the same as, or narrower than, those of the generic offense" when "a defendant is convicted under a statute that lists multiple, alternative means of satisfying one (or more) of its elements." <u>Mathis</u>, 579 U.S. 500, 503 (2016). The <u>Mathis</u> Court described the categorical approach, and observed that "[t]he comparison of elements that the categorical approach requires is straightforward when a statute sets out a single (or 'indivisible') set of elements to define any single crime." <u>Id.</u> at 504-05. In that circumstance, the Court said, a lower court would simply line up the elements of the crime of conviction with the elements of the generic offense "and see[] if they match." <u>Id.</u> at 505. The Court explained that

> [s]ome statutes, however, have a more complicated (sometimes called "divisible") structure, making the comparison of elements harder. A single statute may list elements in the alternative, and thereby define multiple crimes. Suppose, for example, that the California law [of which the defendant had been convicted] had prohibited "the lawful entry or the unlawful entry" of a premises with intent to steal, so as to create two different offenses, one more serious than the other. If the defendant were convicted of the offense with unlawful entry as an element, then his crime of conviction would match generic burglary and count as an ACCA predicate; but conversely, the conviction would not qualify if it were for the offense with lawful entry as an element. A sentencing court thus requires a way of figuring out which of the alternative elements listed—lawful entry or unlawful entry—was integral to the defendant's conviction (that is, which was necessarily found or admitted). To address that need, this Court approved the "modified categorical approach" for use with statutes having multiple alternative elements. Under that approach, a sentencing court looks to a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of. The court can then compare that crime,

24

as the categorical approach commands, with the relevant generic offense.

Id. at 505-06 (citations omitted).

The Mathis case involved "a different kind of alternatively phrased law: not one that list[ed] multiple elements disjunctively, but instead one that enumerate[ed] various factual means of committing a single element." Id. at 506. The defendant in Mathis had been convicted of violating an Iowa burglary statute that prohibited unlawful entry into any structure, land, water or air vehicle; it did not create separate crimes, but provided alternative methods of committing the single crime of burglary. Id. at 507. The Court had decided in Taylor that generic burglary required unlawful entry into a building or other structure; in contrast, a defendant could be convicted of burglary under the Iowa statute without unlawfully entering a building or structure, and the jury that convicted him would not be required to decide *what* he unlawfully entered as long as it concluded that he unlawfully entered one of the locations listed in the statute. Id. The Mathis Court was required to decide whether §924(e) "treats this kind of statute as it does all others, imposing a sentence enhancement only if the state crime's elements correspond to those of a generic offense—or instead whether the Act makes an exception for such a law, so that a sentence can be enhanced when one of the statute's specified means creates a match with the generic offense, even though the broader element would not." Id. at 506-07.

The sentencing court had applied the modified categorical approach; it looked at "the records of [the defendant's] prior convictions and determin[ed]

25

that he had burgled structures, rather than vehicles." Id. at 507-08. The Supreme Court found error. Id. at 513. It reiterated that the categorical approach focuses on the *elements* of the offense involved in the prior conviction, not the *facts* of the way the defendant committed the crime. Id. The Court pointed to its holding in Descamps, emphasizing—again—that the only circumstance in which it ever had allowed the use of the modified categorical approach (the review of extra-statutory documents) was when a sentencing court needed to determine "which *element[s]* played a part in the defendant's conviction." Id. (quoting Descamps, 570 U.S. at 263). The Court stated that the modified categorical approach was not "to be repurposed as a technique for discovering whether a defendant's prior conviction, even though for a too-broad crime, rested on facts (or otherwise said, involved means) that also could have satisfied the elements of a generic offense." Id. at 514. The Court concluded:

> Our precedents make this a straightforward case. For more than 25 years, we have repeatedly made clear that application of the ACCA involves, and involves only, comparing elements. Courts must ask whether the crime of conviction is the same as, or narrower than, the relevant generic offense. They may not ask whether the defendant's conduct—his particular means of committing the crime—falls within the generic definition. And that rule does not change when a statute happens to list possible alternative means of commission: Whether or not made explicit, they remain what they ever were—just the facts, which ACCA (so we have held, over and over) does not care about.

Id. at 519.

4.     *Section 924(c)*

The cases reviewed above applied the categorical approach (or, occasionally, the modified categorical approach) to determine whether a prior conviction qualified as a predicate offense warranting a sentencing enhancement under §924(e)—the ACCA. The defendants in this case, however, have not argued that, if convicted, they face possible enhanced sentences under the ACCA. They argue that they have been charged with violating §924(c) by possessing a firearm during a crime of violence, but they insist that under the categorical approach, carjacking does not constitute a crime of violence under §924(c). That argument begs the question—does the categorical approach apply to predicate acts under §924(c)? The answer is "yes," by way of the Supreme Court's jurisprudence relating to "residual clauses" of statutes defining violent felonies.

As background: Section 924(e)(2)(B)—the section of the ACCA that defines the term "violent felony"—has two subsections. The first, often called the "elements" subsection, defines a violent felony as one that "has as an element the use, attempted use, or threatened us of physical force against the person of another." §924(e)(2)(B)(i). The second subsection—§924(e)(2)(B)(ii)—contains two clauses. The first clause lists specific offenses that qualify as "violent felonies" and thus predicate offenses justifying an enhanced sentence: "any crime punishable by imprisonment for a term exceeding one year . . . that—is burglary, arson, or extortion" or "involves use of explosives." The second clause is what has become known as the "residual" clause." That clause says that "any crime punishable by imprisonment for a term exceeding one

27

year . . . that—*otherwise involves conduct that presents a serious potential risk of physical injury to another*" qualifies as a "violent felony" justifying an enhanced sentence. (Emphasis added.) In 2015, the Supreme Court struck down as unconstitutionally vague the ACCA's residual clause. <u>Johnson v. United States</u>, 576 U.S. 591 (2015). Three years later, the Court struck down "a different, almost identically worded statute," <u>Davis</u>, 588 U.S. at 450—the residual clause of 18 U.S.C. §16, which defines "crime of violence" for several federal criminal statutes. <u>Sessions v. Dimaya</u>, 584 U.S. 148 (2018).

Like the ACCA, 18 U.S.C. §924(c) defines a "crime of violence" for the purpose of identifying predicate offenses. Like the ACCA, §924(c)'s definitional section has two subsections—an "elements" subsection and a subsection often called the "force" or the "residual" subsection. Section 924(c)(3)(A)—the "elements" subsection—defines a "crime of violence" as a felony that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." Section 924(c)(3)(B)—the "force" or "residual" subsection—defines a "crime of violence" as a felony "that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."

In <u>United States v. Davis</u>, 588 U.S. 445 (2019), the Court pointed out that, contrary to the government's arguments in that case, "[f]or years, almost everyone understood § 924(c)(3)(B) [§924(c)'s residual clause] to require exactly the same categorical approach that this Court found problematic in the residual clauses of the ACCA and § 16." <u>Davis</u>, 588 U.S. at 453. Rejecting the

28

government's arguments to the contrary, the <u>Davis</u> Court said that §924(c)'s residual clause "carries the same categorical-approach command as" those other statutes. <u>Id.</u> at 459. Two years later, the Supreme Court confirmed that the categorical approach applies when a sentencing court is determining "whether a federal felony may serve as a predicate for a conviction and sentence under the elements clause" of §924(c). <u>Taylor</u>, 596 U.S. at 850.

### D. Application of the Categorical Approach to the Offense Charged in Count One—Carjacking

Remember that Count One alleges that the defendants "knowingly took a motor vehicle, which had been transported, shipped, and received in interstate and foreign commerce, from another person by force, violence, and intimidation, with the intent to cause death and serious bodily harm," in violation of 18 U.S.C. §§2119(1) and 2(a). The defendants repeatedly assert that the court must use the categorical approach (not the modified categorical approach) to determine whether carjacking may serve as a predicate for conviction under the elements provision of §924(c). The court agrees that it must apply the categorical approach, not the modified categorical approach.

In applying the categorical approach, the court must look at the elements of the offense to determine whether carjacking "has as an element the use, attempted use, or threatened use of physical force." §924(c)(3)(A).

> "To convict a defendant of carjacking, the Government must prove that the defendant: (1) with intent to cause death or serious bodily harm; (2) took a motor vehicle; (3) that had been transported, shipped, or received in interstate or foreign commerce; (4) from the person or presence of another; (5) by force and violence or intimidation." *United States v. Taylor*, 814 F.3d 340, 373 (6th Cir. 2016) (citing 18 U.S.C. § 2119).

29

<u>United States v. D.J.H.</u>, 179 F. Supp. 3d 866, 872 (E.D. Wis. 2016).[2]

In his brief to Judge Duffin in support of his motion to dismiss, Cortez argued that §2119 criminalized "less culpable punishment than what's covered by § 924(c)(3)(A)'s definition" of a crime of violence in two ways. Dkt. No. 27 at 5. First, he argued that carjacking "can be committed through intimidation and therefore not require the knowing or purposeful use or threat of force." <u>Id.</u> Second, he argued that "at least one alternative means of committing the offense of carjacking—attempting to do so—falls outside the crime of violence definition after *United States v. Taylor*, 142 S. Ct. 2015 (2022), thereby rendering the offense as a whole broader than § 924(c)(3)(A)'s definition." <u>Id.</u> Cortez concluded, "[f]or either or both of these reasons, the government is not *always* required to prove 'the use, attempted use, or threatened use of force' to convict someone of carjacking under § 2119, and, as a result, it is not a valid § 924(c) predicate." <u>Id.</u> at 5-6 (emphasis in original).

      1.    *The Fact that Carjacking Can be Committed by "Intimidation" Does Not Result in the Conclusion that Under the Categorical Approach, Carjacking Does Not Qualify as a "Crime of Violence"*

The defendants do not dispute that carjacking "by force and violence" is a crime that "has as an element the use, attempted use, or threatened use of physical force." Cortez argues, however, that the statute also prohibits carjacking by "intimidation." Dkt. No. 27 at 5-6. He asserts that the inclusion of "intimidation" as an element means that the government "is not *always*

---

[2] The Seventh Circuit does not have a pattern jury instruction for carjacking.

required to prove 'the use, attempted use, or threatened use of force' to convict someone of carjacking under § 2119, and, as a result, it is not a valid § 924(c) predicate." Id.

The problem with this argument is that the Seventh Circuit has held—repeatedly—that intimidation "means the threat of force." United States v. Jones, 932 F.2d 624, 625 (7th Cir. 1991). See also, Armour, 840 F.3d at 909 (disagreeing that robbery by intimidation does not qualify as a "crime of violence" under the elements clause of §924(c))[3]; Gordon, 642 F.3d at 598 ("Intimidation exists when a bank robber's words and actions would cause an ordinary person to feel threatened, by giving rise to a reasonable fear that resistance or defiance will be met with force."); Thornton, 539 F.3d at 748 ("Intimidation is the threat of force, which "'exists in situations where the defendant's conduct and words were calculated to create the impression that any resistance or defiance . . . would be met with force.'""); United States v. Smith, 131 F.3d 685, 688 (7th Cir. 1997) ("Established case law holds that intimidation is a reasonable fear that resistance will be met with physical force."). Under Seventh Circuit law, "intimidation" is the "threatened use of force," which means that §2119's prohibition against carjacking by intimidation requires the government to prove beyond a reasonable doubt the threatened use of force.

_____

[3] In his reply brief before Judge Duffin, Cortez discussed Armour, although he did not acknowledge its holding that robbery by intimidation qualifies as a crime of violence under §924(c). Dkt. No. 43 at 2. Instead, he cited it as an example of how "novel" arguments met with skepticism by the government and lower courts may sometimes end up being adopted by the Supreme Court.

31

Cortez did not discuss—or mention—the Seventh Circuit decisions discussed in the previous paragraph. Instead, he cited Leocal v. Ashcroft, 543 U.S. 1 (2004) and Borden for the proposition that taking a car by intimidation "does not require a specific intent to use or threaten force." Dkt. No. 27 at 8. Leocal involved a lawful permanent resident who challenged his removal, arguing that his prior conviction under Florida law for driving under the influence and causing serious bodily injury did not constitute a "crime of violence" under 18 U.S.C. §16(b) (the "residual" clause of §16, which the Court would find unconstitutionally vague fourteen years later). Section 16(b) defined a crime of violence as "any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." Leocal, 543 U.S. at 3-5. Leocal argued that "his conviction did not require the 'use' of force against another person because the most common employment of the word 'use' connotes the *intentional* availment of force, which is not required under the Florida DUI statute." Id. at 9. The Supreme Court accepted *certiorari* to "resolve a conflict among the Courts of Appeals on the question whether state DUI offenses similar to the one in Florida, which either do not have a *mens rea* component or require only a showing of negligence in the operation of a vehicle, qualify as a crime of violence." Id. at 6. The Leocal Court concluded that the Florida statute did "not require proof of any particular mental state," id. at 7, and that §16(b)'s requirement that the offense involve a "substantial risk" of using physical force required "a higher *mens rea* than the merely accidental or

32

negligent conduct involved in a DUI offense[,]" id. at 11. That meant that Leocal's Florida DUI conviction did not involve a felony that "by its nature, involve[d] a substantial risk that physical force" may be used in committing it.

The Supreme Court decided Leocal in 2004—prior to all but one of the decisions in which the Seventh Circuit held that "intimidation" means the threat of force. That decision had no impact on the Seventh Circuit's decisions—was not cited in them—and this makes sense. Carjacking by intimidation requires a person to take the car from the person of another with intent to cause death or serious bodily harm. The Seventh Circuit has said that intimidation exists when the "defendant's conduct and words *were calculated* to create the impression that any resistance or defiance . . . would be met with force." Thornton, 539 F.3d at 748. Carjacking by intimidation, unlike the Florida DUI statute in Leocal, *does* require a particular *mens rea*. The defendant must intend his conduct and words to give the victim the impression that the defendant would use force or violence, and he must take the car with the intent to cause death or serious bodily harm.

The Supreme Court decided Borden in 2021, after the Seventh Circuit decisions this court has cited. In Borden, the district court enhanced the defendant's sentence under the ACCA based on his Tennessee conviction for reckless aggravated assault; Tennessee law described that offense as "[r]ecklessly commit[ting] an assault" that either caused serious bodily injury or used or displayed a deadly weapon. Borden, 593 U.S. at 424-25 (quoting Tenn. Code Ann. §39-13-102(a)(2) (2003)). The Borden Court explained that in Leocal,

33

it had "reserved the question whether an offense with a *mens rea* of recklessness . . . fails to qualify as a crime of violence." Id. at 428. The Court concluded that the "elements" clause of the ACCA, which defined a "violent felony" as one that required the "use of physical force against the person of another," did not criminalize reckless conduct. Id. at 429. The Court explained that the statute's use of the phrase "against another" as a modifier for the phrase "use of force" required "that the perpetrator direct his action at, or target, another individual." Id.

Like Leocal, Borden is not applicable here. Carjacking by intimidation requires the government to prove that the defendant took the vehicle "with the intent to cause" the victim "death or serious bodily harm;" the "intimidation" element requires the government to prove that the defendant intended his conduct and words to give the victim the impression that he would use force or violence. A defendant cannot "recklessly" intend his conduct or words to create the impression that he would use force or violence. Twenty-five years ago, in Holloway v. United States, 526 U.S. 1, 3 (1999), the Supreme Court was asked to determine whether §2119(a)'s "with the intent to cause death or serious bodily harm" language "requires the Government to prove that the defendant had an unconditional intent to kill or harm in all events, or whether it merely requires proof of an intent to kill or harm if necessary to effect a carjacking." The Court held that "Congress intended to criminalize the more typical carjacking carried out by means of a deliberate threat of violence, rather than

just the rare case in which the defendant has an unconditional intent to use violence regardless of how the driver responds to his threat." Id.

In his objection to Judge Duffin's report, Cortez cited Holloway for the proposition that the government "does not have to prove specific intent to put the victim in fear of injury in every case" of carjacking under §2119. Dkt. No. 46 at 10. The Holloway Court explained that "a carjacker's intent to harm his victim may be either 'conditional' or 'unconditional.'" Holloway, 526 U.S. at 7. In other words, the carjacker could intend to cause death or serious bodily harm to the victim only if the victim doesn't comply with his demands (conditional) or he could intend to cause death or serious bodily harm to the victim regardless of what the victim does (unconditional). The Holloway Court found that a "commonsense" reading of §2119 showed that Congress intended to cover both. Id. It discussed the fact that "'specific intent' to commit a wrongful act may be conditional." Id. at 9 (citation omitted). "[A] defendant may not negate a proscribed intent by requiring the victim to comply with a condition the defendant has no right to impose; '[a]n intent to kill, in the alternative, is nevertheless an intent to kill.'" Id. at 11.

The Holloway Court explained,

This interpretation of the statute's specific intent element does not, as petitioner suggests, render superfluous the statute's "by force and violence or by intimidation" element. While an empty threat, or intimidating bluff, would be sufficient to satisfy the latter element, such conduct, standing on its own, is not enough to satisfy § 2119's specific intent element. In a carjacking case in which the driver surrendered or otherwise lost control over his car without the defendant attempting to inflict, or actually inflicting, serious bodily harm, Congress' inclusion of the intent element requires the Government to prove beyond a reasonable doubt that the defendant

35

would have at least attempted to seriously harm or kill the driver if that action had been necessarily to complete the taking of the car.

Id. at 11-12.

Cortez seizes on the last clause of the last sentence to conclude that the intent requirement of §2119 "is satisfied if the government proves that an individual would have attempted to harm or kill the victim had the victim offered resistance," then jumps from there to the conclusion that "the government does not have to prove specific intent to put the victim in fear of injury in every case." Dkt. No. 46 at 10.

The court does not follow this leap in logic. The Holloway Court was discussing §2119's requirement that the government must prove that a defendant charged with violating that statute took the vehicle "with the intent to cause death or serious bodily injury." It was explaining that the government is required to prove the intent even if the defendant used intimidation, rather than using force or violence or taking a step toward using force or violence. The Holloway Court did not describe a circumstance where the government could prove carjacking without proving that the defendant intended his conduct and words to put the victim in fear of the use of physical force; it described only a situation in which the intimidation resulted in a victim giving up the car without the defendant being required to use force or violence or take a step toward doing so. The defendant reads something into the Holloway language that this court does not see.

Under Supreme Court and Seventh Circuit precedent, then, to prove the crime of carjacking, the government must *always* prove (or the defendant must

36

*always* admit) that a defendant—with the intent to cause death or serious bodily harm—either used force or violence to take the car or that the defendant threatened the use of physical force by using intimidation to take the car.

In his brief in support of his motion Cortez ignored the Seventh Circuit precedent, citing to Judge Duffin cases from other circuits: <u>United States v. Woodrup</u>, 86 F.3d 359 (4th Cir. 1996); <u>United States v. Carter</u>, 7 F.4th 1039 (11th Cir. 2021); <u>Somers v. United States</u>, 15 F.4th 1049 (11th Cir. 2021); <u>United States v. Garcia</u>, 28 F.4th 678 (5th Cir. 2022). Dkt. No. 27 at 8-11. Both Judge Duffin and this court are bound by Seventh Circuit precedent, not decisions from other federal appellate courts.[4] That means that this court also is bound by another Seventh Circuit decision, <u>Brown</u>, 74 F.4th 527.

In his brief to Judge Duffin in support of his motion, Cortez conceded that it was "necessary to acknowledge" the Seventh Circuit's decision in <u>Brown</u>. Dkt. No. 27 at 8. Cortez argued, however, that "[r]ather than relying on *Brown*, which is distinguishable for a number of reasons including the statutory text at issue and the Illinois statute's legislative history," Judge Duffin should look to decisions from other circuits. <u>Id.</u> This court disagrees.

The <u>Brown</u> court considered the definition of a "crime of violence" for the purposes of U.S.S.G. §4B1.1—the career offender guideline. <u>Brown</u>, 74 F.4th at

---

[4] In his reply brief to Judge Duffin in support of his motion, Hill also cited decisions from the Fourth (<u>United States v. Torres-Miguel</u>, 701 F.3d 165 (4th Cir. 2012)) and Sixth (<u>United States v. Jackson</u>, 918 F.3d 467 (6th Cir. 2019)) Circuits. Dkt. No. 42 at 3-4. (He argued that the Sixth Circuit case was wrongly decided. <u>Id.</u>) Again, there is Seventh Circuit law on point and this court must follow it.

37

528. The language of the elements clause of that guideline is identical to the language of §924(c)'s elements clause; it defines a crime of violence as a felony that "has as an element the use, attempted use, or threatened use of physical force against the person of another.' <u>Id.</u> at 529. Brown had a prior conviction under Illinois law for "vehicular hijacking." <u>Id.</u> That statute prohibited a person from taking "a motor vehicle from the person or the immediate presence of another by the use of force or by threatening the imminent use of force." <u>Id.</u> at 530. Brown argued that the statute did not have a particular *mens rea* requirement, and that under Illinois law, that meant that the offense could be committed with reckless use of force. <u>Id.</u> The Seventh Circuit disagreed.

First, the court emphasized that the object of the Illinois offense of vehicular hijacking (like the object of carjacking under §2119) was a motor vehicle. <u>Id.</u> at 531. "Unlike other forms of property which might, conceivably, be taken recklessly or even accidentally, it is difficult, if not impossible, to conceive of taking a motor vehicle from another person in any manner other than knowingly and purposefully." <u>Id.</u> Next, the court stated that the Illinois statute's language—"which proscribes taking *by* the use or threat of force—strongly suggests that force or intimidation must be aimed or directed at the taking of the motor vehicle." <u>Id.</u> (citation omitted). The court held that "[e]mploying force or intimidation in order to facilitate the taking of a vehicle is not the sort of reckless use of force that *Borden* found to be beyond the scope of the elements clause." <u>Id.</u> The court held that the Illinois legislature's "decision to create a unique offense for vehicular hijacking reveals a specific

38

legislative purpose: to criminalize the deliberate act of taking a motor vehicle from another person, using force or intimidation to accomplish that goal." Id. at 532.

In his objection to Judge Duffin's recommendation, Cortez said, "While acknowledging the Seventh Circuit's decision in *United States v. Brown*, . . . Cortez maintains that carjacking under § 2119(1) does not always require proof of a specific intent to use or threaten force sufficient to satisfy § 924(c)'s definition of crime of violence." Dkt. No. 46 at 9. Cortez understood the Brown court to hold that the Illinois vehicular hijacking statute "proscribed using force for a specific purpose—'in order to facilitate the taking of a vehicle' . . . ." Id. He argued, "[c]arjacking under § 2119(1), by contrast, requires only conditional intent and can be accomplished through intimidation that's similarly conditional," citing the Supreme Court's decision in Holloway. Id.

Again, the court finds this reasoning hard to follow. Conditional intent *is* specific intent, as the Holloway Court explained. It is the intent to cause death or serious bodily injury whether the victim complies or not. And the Seventh Circuit has held that intimidation requires a defendant to intend his words and actions to put the victim in fear that he will use physical force. Whether the defendant's intent is "conditional" is irrelevant, as the Holloway Court explained.

In sum: To prove carjacking in violation of 18 U.S.C. §2119, the government *always* must prove beyond a reasonable doubt the use, attempted

use or threatened use of force. Applying the categorical approach, carjacking as charged in Count One qualifies as a "crime of violence" as defined by §924(c).

>      2.      *The Fact that §2119 Prohibits Attempted Carjacking Does Not Result in the Conclusion that Under the Categorical Approach, Carjacking Does Not Qualify as a "Crime of Violence"*

Cortez argues, however, that the court cannot apply the categorical approach only to the crime with which he has been charged—*completed* carjacking. He asserts that §2119 is one of those statutes discussed in <u>Mathis</u>, 579 U.S. at 503: "a statute that lists multiple, alternative means of satisfying one (or more) of its elements." Cortez observes that §2119 prohibits taking a motor vehicle from the person or presence of another by force and violence or by intimidation *or* attempting to do so. He maintains that "attempting" to take a car by force and violence or intimidation is one means of taking a car by force and violence or intimidation; he argues that under <u>Mathis</u>, this renders §2119 an "indivisible" statute. Dkt. No. 27 at 11-12. And, he says, because the Supreme Court has held that an attempt (albeit in the context of Hobbs Act robbery, not carjacking) does not qualify as a crime of violence for purposes of §924(c), the "indivisible" §2119 includes a means of committing the crime that does not have as an element the use, attempted use or threatened use of physical force against the person of another, which means that under the categorical approach, the entire, indivisible statute does not qualify as a crime of violence and thus does not qualify as a predicate under §924(c). <u>Id.</u> at 12-13.

The plaintiff correctly recounts that in the summer of 2022, the Supreme Court held that "no element of attempted Hobbs Act robbery requires proof that

the defendant used, attempted to use, or threatened to use force." <u>Taylor</u>, 596 U.S. at 852. Justin Taylor pled guilty to attempted Hobbs Act robbery and to using and carrying a firearm during the attempted Hobbs Act robbery (in violation of §924(c)). <u>Id.</u> at 848-49. After the Supreme Court decided <u>Davis</u> (in which it held the residual clause of §924(c)'s definition of "crime of violence" unconstitutionally vague), Taylor filed a *habeas* petition, arguing that attempted Hobbs Act robbery did not qualify as a "crime of violence" after <u>Davis</u>. <u>Id.</u> at 849. Before the Supreme Court, Taylor and the government agreed that the Court should apply the categorical approach to determine whether attempted Hobbs Act robbery had, as an element, the use, attempted use or threatened use of physical force (as required by the elements clause of §924(c)(3)(A)). <u>Id.</u> at 850. The Supreme Court observed that to prove a charge of *completed* Hobbs Act robbery, the government was required to prove that "the defendant engaged in the 'unlawful taking or obtaining of personal property from the person . . . of another, against his will, by means of actual or threatened force." <u>Id.</u> (citing 18 U.S.C. §1951(b)). To prove a charge of *attempted* Hobbs Act robbery, however, the government must prove that "(1) The defendant intended to lawfully take or obtain personal property by means of actual or threatened force, and (2) he completed a 'substantial step' toward that end." <u>Id.</u> at 851 (citations omitted).

The Court held:

> To know that much is enough to resolve this case. Whatever one might say about *completed* Hobbs Act robbery, *attempted* Hobbs Act robbery does not satisfy the elements clause. Yes, to secure a conviction the government must show an intention to take property

by force or threat, along with a substantial step toward achieving that object. But an intention is just that, no more. And whatever a substantial step requires, it does not require the government to prove that the defendant used, attempted to use, or even threatened to use force against another person or his property.

Id.

The Court provided an example:

Suppose Adam tells a friend that he is planning to rob a particular store on a particular date. He then sets about researching the business's security measures, layout, and the time of day when its cash registers are at their fullest. He buys a ski mask, plots his escape route, and recruits his brother to drive the getaway car. Finally, he drafts a note—"Your money or your life"—that he plans to pass to the cashier. The note is a bluff, but Adam hopes its implication that he is armed and dangerous will elicit a compliant response. When the day finally comes and Adam crosses the threshold into the store, the police immediately arrest him. It turns out Adam's friend tipped them off.

There is little question the government could win a lawful conviction against Adam for attempted Hobbs Act robbery. After all, he intended to take property against the cashier's will by threat of force, and his actions constituted a substantial step toward that goal. At the same time, this example helps show why attempted Hobs Act robbery does not qualify as a crime of violence under the elements clause. Adam did not "use" physical force. He did not "attempt" to use such force—his note was bluff and never delivered. And he never evet got to the point of threatening the use of force against anyone or anything. He may have intended and attempted to do just that, but he failed. Simply put, no element of attempted Hobbs Act robbery requires proof that the defendant used, attempted to use, or threatened to use force.

Id. at 852.

The Taylor (2022) Court held that an attempted Hobbs Act robbery (in violation of 18 U.S.C. §1951) does not constitute a "crime of violence" under §924(c)'s elements clause. The defendants have not been charged with Hobbs Act robbery (or attempted Hobbs Act robbery). The predicate offense for their

42

§924(c) charge is carjacking in violation of §2119. Neither the Supreme Court nor the Seventh Circuit have held that attempted *carjacking* does not qualify as a crime of violence as defined by §924(c). Cortez, however, believes that the law is headed in that direction. In his objection, Cortez points to one of the cases cited by Judge Duffin in his recommendation—a case Judge Duffin had included in the list of cases he said had rejected the argument that carjacking does not constitute a crime of violence. Dkt. No. 46 at 2. Cortez cites an Eleventh Circuit case, Ovalles, 905 F.3d at 1304 (which originated in the Northern District of Georgia), and explains that the Eleventh Circuit has allowed the defendant in that case to file a (presumably second or successive) §2255 petition challenging her §924(c) conviction predicated on attempted carjacking. Id. Cortez explains that in that case, the government agreed that the district court should issue an order vacating the defendant's §924(c) conviction. Id. Later in the objection, Cortez says that the government "has admitted in other cases post-*Taylor* that attempted carjacking as defined in §2119(1) is not a crime of violence under §923(c)(3)," and he cites Ovalles and another case from the Northern District of Georgia, Kahn v. United States, Case No. 17-CR-433-TCB-1, Doc. No. 53 at 6-7 (N.D. Ga. Jan. 26, 2023). Id. at 6.

Cortez appears to be correct that the government "has admitted" in two cases in the Northern District of Georgia that *attempted* carjacking no longer qualifies as a crime of violence after the U.S. Supreme Court's June 2022 decision in Taylor. Perhaps, as the defendants imply, the Seventh Circuit, or

43

even the Supreme Court, will reach that conclusion sometime in the future. But it is not a given. In July 2023—a year after the Supreme Court decided Taylor (2022), the Seventh Circuit found that attempted murder of a federal officer in violation of 18 U.S.C. §§1113-114 qualified as a crime of violence under §924(c). In United States v. States, 72 F.4th 778, 783-84 (7th Cir. 2023), the defendant argued that Taylor (2022) "applie[d] to all attempt offenses and establishe[d] that attempt crimes are never crimes of violence." Id. at 785. The Seventh Circuit, however, said that "*Taylor* is silent about attempts to commit crimes that require the use of force, and the sounder reading of '[w]hatever one might say about *completed* Hobbs Act robbery' is that the [Supreme] Court was declining to reach a question unnecessary to its decision." Id. at 786.

The Seventh Circuit opined that States's "reading of *Taylor*—that no attempt offense is a crime of violence—would effectively strike 'attempted use . . . of physical force' from § 924(c)(3)(A) because that phrase would describe an empty set of offenses." Id. The court explained that "[f]ederal statutes seldom include attempted conduct as an element of a completed crime." Id. It explained that "[t]he federal criminal code contains no standalone attempt statute." Id. (citing United States v. Muresanu, 951 F.3d 833, 837 (7th Cir. 2020)). And, the court explained, "because attempts and completed offenses are distinct crimes, . . . a statute that prohibits a crime and the attempt to commit it is likely to be divisible, so we would not consider the attempted crime's elements when determining whether the completed offense is a crime of violence." Id. at 787 (citing Worthen, 60 F.4th at 1070). The court concluded

44

that "*Taylor*'s holding applies only to attempts to commit crimes that can be completed by threat of force." <u>Id.</u> (citations of other circuit cases reaching the same conclusion omitted).

Maybe the Seventh Circuit or the Supreme Court someday will conclude that attempted carjacking in violation of §2119 falls within the ambit of <u>Taylor</u> (2022)—that it is an attempt to commit a crime that can be completed by threat of force. But whether the Seventh Circuit or the Supreme Court someday will find that attempted carjacking is not a crime of violence is irrelevant to this court's decision in this case.

First, of course, the court must decide this case based on the law as it stands today. Second, the grand jury did not charge Cortez and Hill with *attempted* carjacking. It charged them with *completed* carjacking. In the Northern District of Georgia cases Cortez has cited, and in the government's argument to Judge Duffin in this case (Dkt. No. 41 at 3), the government conceded that *attempted* carjacking is not a predicate offense for a §924(c) conviction, but it did *not* concede that a *completed* carjacking is not a predicate offense.

Because the defendants have been charged with *completed* carjacking, one might think that employing the categorical approach would require only that the court ask whether the crime of *completed* carjacking always requires the government to prove beyond a reasonable doubt, as an element of its case, the use, attempted use or threatened use of force. If that is the question, the court answered it in the affirmative in <u>Ellis</u> and <u>Jordan</u>, relying on the Seventh

45

Circuit's reasoning in Armour. It also has answered it in the affirmative in this case. And Judge Duffin pointed out that multiple courts of appeal also have answered it in the affirmative.

The defendants respond that the cases Judge Duffin cited were decided before the Supreme Court decided Davis (June 2019), Borden (June 2021) and Taylor (June 2022). The court has not researched whether the 2019 cases Judge Duffin cited were decided before Davis. But since the Supreme Court issued the Taylor decision in 2022 (and notably, well before the defendants filed their May 2024 motions to dismiss and their August 2024 objections to Judge Duffin's recommendation), the First Circuit has summarily rejected an argument that Davis imperiled the petitioner's §924(c) conviction based on the predicate offense of a *completed* carjacking. Ocasio-Ruiz v. United States, Case No. 20-2000, 2023 WL 10818231, at *1 (1st Cir. July 10, 2023). In Mathurin v. United States, the Eleventh Circuit observed that "[f]ollowing the Supreme Court's decision in *Davis*, we have stated 'carjacking qualifies as a crime of violence under the elements clause of § 924(c)(3)(A).'" Mathurin, Case No. 20-14695, 2023 WL 4703299, at *5 n.7 (11th Cir. July 24, 2023) (citing Steiner v. United States, 940 F.3d 1282, 1293 (11th Cir. 2019)). In United States v. Draven, 77 F.4th 307 (4th Cir. 2023), the Fourth Circuit rejected the defendant's argument that post-Davis and Taylor, aiding and abetting carjacking no longer qualified as a crime of violence predicate under §923(c)(3)(A). The Draven court explained:

> Whereas aiding and abetting a crime possesses the same elements as the underlying offense, "*Taylor* hinge[s] on the fact that attempt

46

is a separate crime from the underling offense, with the distinct element of a 'substantial step'" which a defendant could take "without also committing all the elements of a Hobbs Act robbery." *United States v. Worthen*, 60 F.4th 1066, 1070 (7th Cir. 2023) (quoting *Taylor*, 142 S. Ct. at 2020). And because the Supreme Court did not explicitly instruct on *Taylor*'s reach beyond the purview of *attempted* Hobbs Act robbery, it is not in our authority to expand its scope today.

Id. at 318. Finally, the Sixth Circuit addressed the issue in December 2023, and concluded—citing Taylor—that carjacking requires that a defendant "actually used force or intimidation to accomplish his goal," and thus that the Taylor Court's concern "that a defendant may be convicted of attempted robbery for conduct occurring 'before he reaches his robbery victim and before he has actually engaged in threatening conduct'" did not arise. United States v. Jackson, Case No. 22-3958, 2023 WL 8847859, at *5 (6th Cir. Dec. 21, 2023) (petition for cert docketed).

Despite this authority, the defendants persist. They reject the distinction between *completed* and *attempted* carjacking; as the court explained, they have argued that §2119 is an "indivisible" statute like the one the Supreme Court confronted in Mathis. The court disagrees—and this is the third reason that any future Seventh Circuit or Supreme Court ruling regarding *attempted* carjacking is irrelevant to the court's decision in this case.

In considering the argument that a completed carjacking does not constitute a crime of violence, at least one district court has held that §2119 is divisible. In United States v. Bertrand, Case No. 20-CR-547, 2023 WL 22623, *4 (E.D.N.Y. Jan. 3, 2023), the district court for the Eastern District of New

47

York reasoned that §2119 defines two crimes: completed carjacking and attempted carjacking. Id. It observed that "[t]he elements of the completed carjacking offense are laid out directly in the statute: (1) "with the intent to cause death or serious bodily harm," (2) "tak[ing] a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another," and doing so (3) "by force and violence or by intimidation." Id. (citing 18 U.S.C. § 2119). Following a Second Circuit decision on point, the E.D.N.Y. court concluded that the elements of a completed federal carjacking necessarily involve "the use, attempted use or threatened use of physical force against the property of another." Id. (citing United States v. Felder, 993 F.3d 57, 80 (2d Cir. 2021)).

In this court's mind, the "divisible/indivisible" analysis is inapplicable. Neither the Hobbs Act (the statute involved in Taylor (2022)) nor §2119 set out alternative *elements* of a single offense. As the States court explained, "[f]ederal courts seldom include attempted conduct as an element of a completed crime." States, 72 F.4th at 786. Instead, both the Hobbs Act and §2119 prohibit *either* committing the completed act *or* attempting to commit the act. The Hobbs Act—18 U.S.C. §1951(a)—prohibits someone from obstructing, delaying or affecting commerce by robbery or extortion, *or* by attempting or conspiring to do so. As the Supreme Court explained in Taylor, to prove a *completed* Hobbs Act robbery, "the government must show that the defendant engaged in the 'unlawful taking of or obtaining of personal property from the person . . . of another against his will, by means of actual or threatened force," while to prove

48

a charge of *attempted* Hobbs Act robbery, the government must prove "(1) [t]he defendant intended to unlawfully take or obtain personal property by means of actual or threatened force, and (2) he completed a 'substantial step' toward that end." Taylor, 596 U.S. at 850-851 (citing 18 U.S.C. §1951(b)). Considering the elements of an *attempted* Hobbs Act robbery, the Taylor Court held that the *attempted* Hobbs Act robbery does not require the government to prove "that the defendant used, attempted to use, or even threatened to sue force against another person or his property." Id. at 851.

Almost a year after the Supreme Court decided Taylor (2022), the Seventh Circuit was asked to revisit its prior rulings that aiding and abetting a *completed* Hobbs Act robbery constitutes a crime of violence for §924(c)(3)(A) purposes. In Worthen, the defendant argued that Taylor (2022) called into question those rulings. Worthen, 60 F.4th at 1068. But the Seventh Circuit explained,

> *Taylor* held that attempted Hobbs Act robbery is not a crime of violence. The Court reasoned that the crime of attempt requires only that a defendant who intends to commit a Hobbs Act robbery take a "' substantial step' toward that end." And a "substantial step" does not necessarily require using, attempting to use, or threatening force.

Id. at 1070 (pinpoint citations to Taylor (2022) omitted). The appellate court said that Worthen had "latched on" to that conclusion and read Taylor (2022) to limit crimes of violence "to those requiring that the defendant himself used force." Id. The court rejected this argument. In so doing, it explained that

49

"*Taylor* hinged on the fact that attempt is a separate crime from the underlying offense, with the distinct element of a 'substantial step.'" Id.

Since Worthen, the Seventh Circuit twice more has stated that attempt is a separate offense from the underlying crime. As this court has recounted, the States court—citing Worthen—explained that "attempts and completed offenses are distinct crimes." States, 72 F.4th at 787. In Mwendepeke v. Garland, the court stated that "attempted Hobs Act robbery is an inchoate offense with separate elements that do not require the underlying offense to be completed." Mwendepeke, 87 F.4th 860, 871 (7th Cir. 2023). The Seventh Circuit's pattern jury instructions reflect this reality. Instruction 4.09 of the William J. Bauer Pattern Criminal Jury Instructions of the Seventh Circuit (2023 ed.) tracks the Taylor Court's description of the elements of an attempted crime, instructing that a person "attempts" to commit an offense "if he (1) knowingly takes a substantial step toward committing [describe the offense], (2) with the intent to commit [describe the offense]."

Whether one views §2119 as "divisible" into the separate offenses of completed carjacking and attempted carjacking or considers the statute to prohibit two, separate offenses (rendering the "divisible"/ "indivisible" distinction inapplicable), the result is that a court can apply the categorical approach to the offense of *completed* carjacking—the offense with which the defendants in this case have been charged—and can separately apply the categorical approach to the offense of *attempted* carjacking (which it need not do here because the defendants have not been charged with attempted

50

carjacking). The court has applied the categorical approach to the offense of *completed* carjacking—the offense the defendants have been charged with committing—and has concluded that that offense qualifies as a predicate crime of violence under §924(c).

E.  Specific intent

For the reasons the court has explained in the process of applying the categorical approach, the court also rejects the defendants' argument that taking a vehicle by intimidation does not require specific intent. As the court has explained, this argument fails to distinguish the carjacking statute from the statute involved in Borden, which held that a crime that could be committed with recklessness cannot be an offense requiring the "use . . . of physical force against the person of another." 593 U.S. at 426. Unlike the Tennessee aggravated assault statute at issue in Borden, a completed carjacking requires that the defendant act with "intent to cause death or serious bodily harm." As the court has explained, the Seventh Circuit repeatedly has held that intimidation requires a defendant to intend his words and actions to give the victim he impression that he intends to use physical force or violence. And, as the court has explained, the Seventh Circuit's decision in Brown hints that that court likely would reject this argument, because—like a defendant convicted of vehicular hijacking under Illinois law—a defendant convicted of violation §2119 must have acted "with intent to cause death or serious bodily injury."

IV.  **Conclusion**

The court **OVERRRULES** the defendants' objections. Dkt. Nos. 45, 46.

The court **ADOPTS** Judge Duffin's recommendation. Dkt. No. 44.

The court **DENIES** the defendants' motions to dismiss Count Two of the indictment. Dkt. Nos. 27, 30.

The court will schedule a separate hearing to discuss the next steps in the case.

Dated in Milwaukee, Wisconsin this 29th day of October, 2024.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**